Filed 7/15/25  In re K.S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| In re K.S. et al., Persons Coming Under the Juvenile Court Law. | B341596 |
|  | (Los Angeles County Super. Ct. No. 22PSJP00124A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. K.S. et al., Defendants and Appellants. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Stacy Weise, Judge.  Conditionally reversed with directions.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant K.S.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant C.S.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

In this dependency appeal, mother K.S. (Mother) and father C.S. (Father) each appeal from the juvenile court's termination of their parental rights as to their children Kyle (born 2013), Ch.S. (born 2015), and Jacob (born 2016) under Welfare and Institutions Code section 366.26.[1]  The parents' sole argument on appeal is that the Los Angeles County Department of Child and Family Services (Department) failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law, by failing to inquire of an available paternal aunt and an available paternal uncle whether the children might be Indian children under ICWA.

We agree the juvenile court and the Department failed to comply with the inquiry requirements of ICWA and related California law.  Accordingly, we conditionally reverse the court's order terminating the parents' parental rights and remand the matter to allow the Department and the juvenile court to comply

_____

[1]     Undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

with the inquiry and notice provisions of ICWA and California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Petition and ICWA Inquiry*

In August 2022, the Department investigated a referral concerning the children, who were living with Father and their stepmother J.C. During Jacob's investigation interview, Jacob stated his paternal uncle Corey lived in the apartment upstairs and smoked cigarettes with his father on the porch. There is no record that Corey was ever interviewed or asked about Indian ancestry.

In September 2022, the Department filed a section 300 petition alleging physical, medical, and emotional abuse of the children by Father and J.C., substance abuse by Father and J.C., domestic violence, and neglect.[2] The Department subsequently filed an amended petition adding allegations against Mother. Father and Mother each filed an ICWA-020 form denying any known Indian ancestry. At the detention hearing, the juvenile court inquired of each parent whether they had any American Indian ancestry. K.S. stated maternal grandmother Linda J. had told Mother she did but did not identify which tribe, and the court ordered the Department to contact Linda J. Father stated he had no American Indian ancestry that he knew of, but "my mom does speak of being some kind of Indian," and his deceased

---

[2] Section 300 was amended effective January 1, 2023, after the juvenile court issued its jurisdiction findings in this case. (Stats. 2022, ch. 832, § 1.) The amendments do not impact our analysis.

uncle Clifford M. "had a big Cherokee-style nose." Father stated paternal grandmother Dawn H. would have further information, and the court ordered the Department to contact Dawn H. The court detained the children from Father and Mother. The court found it had reason to believe the children may be Indian children under ICWA, and ordered the Department to further investigate.

The parents do not argue there was any ICWA error in the inquiry of maternal relatives. The Department interviewed or attempted to interview the following maternal relatives: On October 19 and November 11, 2022, maternal grandmother Linda J. stated she had no known American Indian ancestry. Linda J. stated it was rumored maternal grandfather Edward M. may have Indian heritage, but he left when Mother was young and she had no contact information for him or his family, or knowledge whether he was still alive. On November 14, 2022 and January 2, 2023, the Department left voicemail messages for maternal grandfather Edward M., but there was no return call. In April 2023, the Department called Edward M. twice with no answer, and mailed him both a contact letter and certified contact letter. On November 14, maternal aunt Silver B. (Linda B.'s daughter and Mother's half-sister) said she had not heard of American Indian ancestry in her family.

The Department interviewed the following paternal relatives: On September 27 and December 23, 2022, paternal grandmother Dawn H. stated she had no known American Indian ancestry. On September 30, paternal aunt Debra N. (also known as Debra L.) stated the family had no known American Indian ancestry. Father continued to deny any Indian ancestry or additional information.

4

In February 2023, the juvenile court sustained the amended petition and removed the children from both parents. The court found there was no reason to know the children were Indian children within the meaning of ICWA and ICWA did not apply. The court instructed the Department to continue to reach out to all relatives regarding potential American Indian ancestry.

B. *Further Proceedings and ICWA Inquiry*

In November 2023, the Department filed a subsequent petition under section 342 alleging Father created a dangerous home environment by allowing J.C. to reside in the home and have access to the children. The Department subsequently reinquired of the parents regarding any known Indian ancestry. Mother repeated she did but did not know which tribe, and was "waiting on" Linda J. to get the paperwork. The Department left a voicemail message for Linda J. Father repeated he had none. In January 2024, the court dismissed the section 342 petition.

In March 2024, the Department interviewed paternal aunt Ashley T., who along with Father was living with paternal grandmother Dawn H. and paternal stepgrandfather F.G. Ray H. There is no record that Ashley T. was asked about Indian ancestry.

In April 2024, the juvenile court held the section 366.22 review hearing with Father, Dawn H., and F.G. Ray H. present. Dawn H. and F.G. Ray H. denied any known American Indian ancestry in the family. The court again found there was no reason to know the children were Indian children within the meaning of ICWA and ICWA did not apply. The court terminated reunification services and set the matter for a section 366.26

hearing.  The court ordered that the section 366.26 report include updated ICWA information.

In July 2024, the Department left voicemail messages for Dawn H. and Linda J.  The Department also interviewed Silver B., who stated the maternal family had Native American ancestry but she did not know anything about it and Linda J. would have more information.

In August 2024, the juvenile court held a section 366.26 hearing.  Father stated he had no new updated information on American Indian ancestry.  The court noted the Department had interviewed the maternal and paternal grandmothers and paternal aunt Debra N., all of whom denied Indian ancestry.  The court also noted that although Mother and maternal aunt Silver B. indicated they may have some ancestry, Linda J. denied any, and while "it was rumored that the maternal great [*sic*] grandfather may have heritage," Linda J. had no contact information for him.  The court again found there was no reason to know the children were Indian children within the meaning of ICWA and ICWA did not apply, and continued the hearing.

In October 2024, the Department again attempted to contact Edward M., but the number was out of service.  The Department interviewed Silver B., who denied any Indian ancestry or knowledge of family ancestry, and denied having any information about Edward M.  The Department interviewed Linda J., who denied having any information about Edward M. or contact with him since Mother was born.  She stated he "always said he was part Indian, but never had any tribal affiliations.  I know his family was from Alabama and none of them were with a tribe."

6

On October 18, the juvenile court held the continued section 366.26 hearing. Father was present and Mother appeared by phone. The court summarized the ICWA inquiry efforts of maternal relatives and asked Mother if she had any additional information, contact information, or relatives available that could provide any more information; she stated she did not. The court summarized the ICWA inquiry efforts of paternal relatives (Father, Dawn H., and Debra N.) and asked Father if there was any updated information; he stated, "No." The court also denied Mother's section 388 petition filed the same day and terminated both parents' parental rights.

Father and Mother each timely appealed.

## DISCUSSION

A.  *ICWA and the Duties of Inquiry and Notice*

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129; see 25 U.S.C. §§ 1902, 1921; see also *In re T.R.* (2024) 107 Cal.App.5th 206, 218.) "[W]hen ICWA applies, 'the Indian child's tribe shall have a right to intervene at any point' in a proceeding involving the removal of an Indian child from their family." (*In re Dezi C.,* at p. 1129; see 25 U.S.C. § 1911(c).) "To ensure tribes have the opportunity to exercise their rights in dependency proceedings, an investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided, where appropriate, to the relevant tribes." (*In re T.R.,* at p. 218; see § 224.2, subd. (a).)

7

An inadequate ICWA inquiry in a dependency case does not involve "a conventional scenario in which the harm from error directly and solely affects the appealing party." (*In re Dezi C. supra,* 16 Cal.5th at p. 1138.) Rather, "an appealing parent 'is in effect acting as a surrogate for the tribe in raising compliance issues.'" (*Ibid.*) "ICWA and Cal-ICWA '"recognize[] that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents"'" and other relatives." (*Ibid.*) "That interest is compromised and cannot be protected if the social service agency and the juvenile court fail to perform their inquiry duties." (*Ibid.*)

The duty to inquire "'begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child.'" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316; see § 224.2, subds. (a)-(c).) The juvenile court is required to "ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child." (§ 224.2, subd. (c).) The Department's duty of "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2); see *In re T.R., supra,* 107 Cal.App.5th at pp. 218-219.)

ICWA and Cal-ICWA define "'extended family member,'" if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second

8

cousin, or stepparent." (25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

The duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e); see *In re T.R., supra,* 107 Cal.App.5th at p. 219.) That further inquiry requires interviewing, "as soon as practicable," extended family members; contacting the Bureau of Indian Affairs; and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e), (e)(2)(C); see *In re T.R.*, at p. 219.)

If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; accord, *In re T.R., supra,* 107 Cal.App.5th at p. 219; see 25 U.S.C. § 1912(a); § 224.3, subd. (a)].) "'The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families.'" (*In re Rylei S., supra,* 81 Cal.App.5th at p. 317; accord, *In re Dezi C., supra,* 16 Cal.5th at pp. 1131-1132.)

"[E]rror resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial.

9

[Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'" (*In re Dezi C., supra,* 16 Cal.5th at p. 1136; accord, *In re T.R. supra,* 107 Cal.App.5th at p. 220; see *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1094 ["a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry"].)

However, "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law (rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*In re Dezi C., supra,* 16 Cal.5th at p. 1141.)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)." (*In re Dezi C., supra,* 16 Cal.5th at p. 1134.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141; see § 224.2, subd. (i)(2).) "'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.'" (*In re Kenneth D., supra,* 16 Cal.5th at pp. 1101-1102.)

B.      *The Department Did Not Adequately Comply with Its Duty of Inquiry Under Section 224.2, Subdivision (b)*

As discussed, the Department had a duty pursuant to section 224.2, subdivision (b), to ask not only the parents, but also extended family members whether the children had possible Indian ancestry.

The parents identify the following available paternal relatives likely to have information bearing on the children's ancestry, but who were not asked: (1) paternal uncle Corey, who lived upstairs from Father and J.C. (according to Jacob) but was never interviewed, and (2) paternal aunt Ashley T., who was interviewed in March 2024 (at which time she was living with Father, paternal grandmother Dawn H. and paternal stepgrandfather F.G. Ray H.) but was not asked about any possible Indian ancestry. The record contains no information about the paternal grandfather.

As detailed above, the Department's reports confirm its social workers or investigators contacted and inquired about Indian ancestry on the paternal side by asking Father, paternal grandmother Dawn H., and paternal aunt Debra. N., all of whom denied Indian ancestry. Paternal stepgrandfather F.G. Ray H. also denied any knowledge of Indian ancestry in the paternal family. As noted, the parents make no argument of error in the inquiry of maternal relatives.

Section 224.2, subdivision (b), does not establish an absolute (and often impossible) standard mandating that every living extended family member be interviewed. What is required, however, is that the Department interview known and available maternal and paternal extended family members and make reasonable efforts to identify and thereafter to interview any

11

other extended family members, as well as other individuals who have an interest in the child regarding the child's possible Indian ancestry.

Here, the Department did not interview or make any showing of reasonable efforts to contact and interview Corey. In addition, although the Department interviewed Ashley T. on March 26, 2024, it made no inquiry of her regarding Indian ancestry. Both of these relatives fall within the categories of statutorily defined extended family members required to be interviewed if available. (See 25 U.S.C. § 1903(2); see also §§ 224.1, subd. (c), 224.2, subd. (b)(2); *In re T.R., supra,* 107 Cal.App.5th at pp. 218-219.) Failure to do so was a failure of the duty of inquiry. Further, on this record there appears to be no determination by the Department or the juvenile court whether the paternal grandfather (or anyone in his lineage) was identified or available to be interviewed. Under the circumstances, the inquiry was inadequate, "'it is impossible to know what the inquiry might reveal'" had these relatives been interviewed, and the judgment must be conditionally reversed. (*In re Dezi C., supra,* 16 Cal.5th at p. 1136; accord, *In re T.R.,* at p. 220; see *In re Kenneth D., supra,* 16 Cal.5th at p. 1094 ["a judgment must be conditionally reversed when error results in an inadequate ICWA inquiry"].)

## DISPOSITION

The orders terminating parental rights are conditionally reversed. The matter is remanded to the juvenile court to ensure the Department complies fully with the inquiry and notice provisions of ICWA and related California law. If the court finds

the minors are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original section 366.26 orders will remain in effect.


                                    MARTINEZ, P. J.


We concur:



        SEGAL, J.



        STONE, J.


13